IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SMART MORTGAGE CENTERS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BRIAN NOE and <br> NEXA MORTGAGE, LLC, <br><br> Defendants, | Case no. |

## COMPLAINT

Plaintiff Smart Mortgage Centers, Inc. ("Smart Mortgage"), by and through its undersigned counsel, files this Complaint for misappropriation of trade secrets against Defendant Brian Noe ("Noe") and Defendant Nexa Mortgage LLC ("Nexa Mortgage") and hereby alleges as follows:

### NATURE OF THE ACTION

### I. PARTIES

1. Plaintiff Smart Mortgage is a corporation formed under the laws of the State of Illinois with its principal place of business at 4003 Plainfield Naperville Road, Suite 207, Naperville, Illinois 60564.

2. Defendant Brian Noe is an individual residing within the Northern District of Illinois.

3. Defendant, Nexa Mortgage is an Arizona limited liability company in good standing that provides mortgage services and products to consumers in several states and within the Northern District of Illinois.

### II. JURISDICTION AND VENUE

4. Jurisdiction over this cause is based upon 28 U.S.C. Sections 1331.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), in that Plaintiff resides in this judicial district and all or a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

6. This action arises under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, et seq. This Court has subject matter jurisdiction over this case for misappropriation of trade secrets under Defend Trade Secrets Act of 2016 pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## FACTUAL BACKGROUND

7. On October 29, 2013, Defendant Brian Noe began employment with Smart Mortgage as a loan officer.

8. On October 29, 2013, Defendant Brian Noe signed a Loan Officer Retention Agreement with Smart Mortgage. See Exhibit A.

9. On April 12, 2014, Defendant Brian Noe and Smart Mortgage finalized the compensation package related to the October 29, 2013 Loan Officer Retention Agreement. See Exhibit A.

10. On January 1, 2018, Defendant Brian Noe signed a Loan Officer Retention Agreement with Smart Mortgage. See Exhibit B.

11. The January 1, 2018 Loan Officer Retention Agreement increased Defendant Brian Noe's financial compensation with Smart Mortgage. See Exhibit B.

12. Defendant Brian Noe was continuously employed with Smart Mortgage from October 29, 2013 through his resignation on December 20, 2019.

13. On February 1, 2018, Defendant Brian Noe downloaded the Dropbox Software Application on his Smart Mortgage company computer without authorization or consent from Smart Mortgage.

14. On February 20, 2019, Defendant Brian Noe requested and was provided Smart Mortgage's closed loan log for files he originated as a Smart Mortgage loan officer from October 29, 2013 to February 20, 2019.

15. Smart Mortgage's closed loan log was provided to Defendant Brian Noe by Smart Mortgage's operations manager, Jon Butusov, on February 20, 2019.

16. On November 22, 2019, Defendant Brian Noe submitted his final two loan applications as a Smart Mortgage employee.

17. On December 19, 2019, Defendant Brian Noe closed his final loan as a Smart Mortgage employee.

18. On December 20, 2019, Defendant Brian Noe tendered his resignation to Smart Mortgage without returning his closed loan log to Smart Mortgage.

19. On December 20, 2019 at 5:30 A.M., Defendant Brian Noe accessed and downloaded information from Smart Mortgage's client database from his company issued computer.

20. Smart Mortgage's client database contains over thirty-eight hundred (3800) unique client names.

21. Defendant Brian Noe's December 20, 2019 computer activity was discovered by an audit conducted by Smart Mortgage's Information Technology manager Paul Stretavong from January 17, 2020 to February 8, 2020.

22. Upon reviewing Defendant Brian Noe's company issued computer, Paul Stretavong discovered that Defendant Brian Noe had changed his password and deleted all of the files and the Dropbox software application from his company issued computer's hard drive on December 20, 2019.

23. Smart Mortgage was able to successfully restore Defendant Brian Noe's deleted files to his company issued computer's hard drive.

24. On December 21, 2019, Cynthia Pedraza sent personal documents to Defendant Brian Noe via his Smart Mortgage's email address for the purpose of obtaining a mortgage for John Munoz.

25. John Munoz's personal identifying information, historical client transaction information, client preferences, and personalized notes are stored in Smart Mortgage's client database.

26. On December 22, 2019, Cynthia Pedraza sent John Munoz's personal documents to Defendant Brian Noe via his Smart Mortgage's email address for the purpose of obtaining a mortgage for John Munoz.

27. On December 25, 2019, Kenneth Barber emailed Defendant Brian Noe via his Smart Mortgage's email address to inquire whether his refinance could be initiated in January 2020 to allow him to skip February and March 2020 mortgage payments.

28. Kenneth Barber's personal identifying information, historical client transaction information, client preferences, and personalized notes are stored in Smart Mortgage's client database.

29. On December 26, 2019, Defendant Brian Noe began his employment with Defendant Nexa Mortgage.

30. On December 30, 2019 and continuing to the present, Defendant Brian Noe has solicited and offered residential mortgage services to multiple individuals from Smart Mortgage's client database.

31. Smart Mortgage derives economic value from its client database because the database exclusively contains individuals who have specifically sought mortgage services with Smart Mortgage, personal identifying information, historical client transaction information, client preferences, and personalized notes.

32. Smart Mortgage's client database was created with the investment of substantial expenditures, skills, sweat equity, and time.

33. Smart Mortgage's regularly and routinely enters into contracts with several lenders including but not limited to United Wholesale Mortgage, PRMG, Inc, Home Point Financial Corporation, Union Home Mortgage Corp., Oaktree Funding Corp., Carrington Mortgage, Bayview Financial, and Flagstar Bank that purchase loans originated by Smart Mortgage.

34. Defendants are actively soliciting Smart Mortgage clients to refinance their existing loans originated by Smart Mortgage, thereby interfering with Smart Mortgage's contracts and prospective advantage with the loan purchasers.

35. As a result of Defendant's Brian Noe's breach of Smart Mortgage's client database, Smart Mortgage sent a "Cease and Desist" letter to both Defendant Brian Noe and Defendant Nexa Mortgage on January 20, 2020.

36. As a result of the Defendant Brian Noe's breach of Smart Mortgage's client database, Smart Mortgage sent letters to all Smart Mortgage clients who may have been impacted by Defendant's Brian Noe misappropriation of Smart Mortgage client's confidential and personal identifying information in early February of 2020.

37. Smart Mortgage has received numerous calls from Smart Mortgage clients concerned that their personal identifying information is compromised.

38. Accordingly, Defendant Brian Noe has caused and is causing irreparable harm to Smart Mortgage's business reputation with the impacted clients.

**BASIS OF CLAIMS**

39. Defendants Brian Noe and Nexa Mortgage have misappropriated Smart Mortgage's client database for their own financial benefits.

40. Defendants Brian Noe and Nexa Mortgage have financially benefited from its continued use of Smart Mortgage's client database to market and sell mortgages loan services and products.

**Violation of The Defend Trade Secrets Act of 2016**

Plaintiff sues Defendants Brian Noe and Nexa Mortgage and alleges:

41. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-41 above as if each were more fully set forth herein.

42. Smart Mortgage is a leading mortgage loan broker currently operating in Illinois, Indiana, Colorado, and Florida and providing loan solutions to its clients based on their individual preferences and needs.

43. Smart Mortgage provides its clients with access to a diverse range of lenders and financial products.

44. The mortgage loan brokerage business is highly competitive and Smart Mortgage's success depends on numerous factors, including its ability to generate client leads, attract and retain reliable and trustworthy loan originators as well as support personnel to obtain and maintain Smart Mortgage's client relationships.

45. Smart Mortgage's client database contains over thirty-eight hundred (3800) unique client names not known or available to the general public with personal identifying information, historical client transaction information, client preferences, and personalized notes.

46. Smart Mortgage's client database is used in or intended for use in interstate commerce as Smart Mortgage operates in Illinois, Indiana, Colorado, and Florida.

47. Competitors would gain an immediate and substantial advantage by accessing Smart Mortgage's client database because the competitors would not be required to create an independent solution via its own efforts and expense.

48. Smart Mortgage invests significant financial resources in its business operations to maintain its competitive advantage and expand its client relationships.

49. Smart Mortgage has a number of policies, procedures, and agreements that it uses to protect its trade secret and confidential information, and safeguard its client relationships.

50. Smart Mortgage owns all of the computers used for its business operations.

51. Smart Mortgage does not employ portable data drives or allow employees to create new files to access and remove data from its computer systems.

52. Smart Mortgage prohibits third party software applications such as Dropbox or similar software applications to access or remove data from its computer systems.

53. Smart Mortgage's client database cannot readily be duplicated from any public sources.

54. Defendants would not have any ability to duplicate Smart Mortgage's client database or develop a comparable independent solution without spending hundreds of thousands of dollars and decades developing a similar client database.

55. Smart Mortgage's client database provides it a competitive advantage in the residential mortgage loan brokerage industry because it is able to generate client leads exclusive to Smart Mortgage and the client database contains historical client transaction information, client preferences, and personalized notes.

56. This ability to generate client leads exclusive to Smart Mortgage loan officers is the linchpin of Smart Mortgage's competitive advantage in the residential mortgage loan brokerage industry.

57. Smart Mortgage's client database was developed over a twenty-year period.

58. Smart Mortgage has invested hundreds of thousands of dollars over a twenty-year period to develop its client database.

59. Smart Mortgage's client database is not available to the general public or its competitors.

60. Smart Mortgage's client database access is restricted to a limited number of employees.

61. Smart Mortgage's client database access is password protected.

62. Smart Mortgage's loan officers are limited to accessing only client data related to files that have been specifically assigned to that particular loan officer.

63. Each loan officer's computer, loan origination software, lead management software is password protected.

64. Smart Mortgage's client database restricts any loan officer from deleting client information.

65. Smart Mortgage's client database is stored on a secure virtual private network and local private network which limits loan officers' access to only their assigned client files.

66. Smart Mortgage does not allow any employees to download third-party software on their company issued work computers.

67. Smart Mortgage requires all of its loan officers to sign Loan Officer Retention Agreements and obligates the loan officer to return all client lists and company property upon leaving the company.

68. Smart Mortgage's client database was misappropriated by Defendants Brian Noe and Nexa Mortgage.

69. Both Defendants knew or had reason to know that the misappropriation was acquired through improper means.

70. Defendant Brian Noe solicited clients from Smart Mortgage's client database despite agreeing that he acknowledged and understood that the customers, customer leads, customer files, customer names, and customer mortgage applications and related customer files and documents that he produced for Smart Mortgage during his employment were the sole and exclusive property of Smart Mortgage.

71. Defendant Nexa Mortgage acquired and used information provided by Defendant Brian Noe to solicit its residential mortgage clients despite knowing or having reason to know that Defendant Brian Noe acquired the information through improper means and without the consent of Smart Mortgage after receiving a "cease and desist" letter providing written notice of Defendant Brian Noe's unlawful actions and/or a cursory review of Defendant Brian Noe's closed transactions with Defendant Nexa Mortgage.

72. Upon information and belief, Defendant Nexa Mortgage acquired and used information provided by Defendant Brian Noe to solicit residential mortgage customers despite knowing or reason to know that the trade secret was acquired by improper means because it encouraged Defendant Brian Noe to bring his "book of business" to Nexa Mortgage.

73. Upon information and belief, Defendant Brian Noe has willfully and maliciously misappropriated Smart Mortgage's client database containing over thirty-eight hundred (3800) unique client names with personal identifying information, historical client transaction information, client preferences, and personalized notes by copying and pasting client files.

74. Smart Mortgage's client database is currently being used by Defendants for their financial benefit.

75. As a direct and proximate result of the actions of Defendants Brian Noe and Nexa Mortgage, Smart Mortgage has suffered actual and compensatory damages in an undetermined amount.

76. To protect its business interests and the confidentiality of business operations, Smart Mortgage has taken affirmative measures, including the utilization of restrictive covenants in its employment contracts, requiring computer username and password protection, firewalls limiting access to information safeguards, and restricting unauthorized use of client data.

77. The restrictive covenants in Smart Mortgage's loan retention agreements are negotiated with each employee as part of their employment and include any combination of clauses concerning confidential information. Each restrictive covenant is limited in scope to protect both Smart Mortgage's legitimate business interests while preventing undue hardship on the employee in his or her pursuit of employment in his or her area of expertise.

78. Defendant Nexa Mortgage knew or should have known that the employees they hired from Smart Mortgage Centers would be covered by employment contracts with restrictive covenants.

79. Upon information and belief, Defendant Nexa Mortgage encouraged Defendant Brian Noe prior to his resignation from his loan officer position at Smart Mortgage as well after he resigned from his loan officer position at Smart Mortgage Centers to engage in unfair and unlawful competition with Smart Mortgage.

80. Defendants Brian Noe and Nexa Mortgage have used and disclosed Smart Mortgage Center' trade secrets and confidential information in violation of Federal law.

81. As a condition of employment, Defendant Brian Noe signed an employment agreement with Smart Mortgage. This agreement contained several restrictive covenants, including clauses related to confidential information.

82. As a loan officer at Smart Mortgage, Defendant Brian Noe's duties to Smart Mortgage Centers included but were not limited to: (i) performing to the best of his ability all duties assigned to him by Smart Mortgage and to carry out all Smart Mortgage's policies and directives as described in the Loan Officer Retention Agreement; (ii) to fully comply with all state and federal laws, rules and regulations regarding the origination and processing of mortgage loans, (iii) to perform to the best of his ability said duties in compliance with all Acts and regulations affecting the residential mortgage industry, and (iv) to not use any confidential information regarding Smart Mortgage's business operations for his own benefit, or divulge, disclose, or communicate this information to any third party, without the prior written consent of Smart Mortgage.

83. In the restrictive covenants in his employment agreement, including those concerning confidential information, Defendant Brian Noe agreed that Smart Mortgage's customers, customer leads, customer files, customer names, and customer mortgage applications and related customer files and documents that he produced for Smart Mortgage during his employment were the sole and exclusive property of Smart Mortgage were Smart Mortgage's sole and exclusive property.

84. Defendant Brian Noe agreed that he would follow this and other restrictive covenants regarding Smart Mortgage's trade secrets and confidential business information during his employment with Smart Mortgage Centers and for as long as the confidentiality of trade secrets and proprietary business information were to be maintained under applicable law.

85. Defendant Brian Noe's agreements to abide by the restrictive covenants were supported by adequate consideration, which consisted of his accepting and continuing his employment and an increase in his compensation.

86. The restrictive covenants in his employment agreement were fair, reasonable, and necessary for the protection of Smart Mortgage's legitimate business interests.

87. During his employment with Smart Mortgage, Defendant Brian Noe had access to all of Smart Mortgage's trade secrets and confidential business information via his company issued work computer.

88. Defendant Brian Noe's company issued work computer was user and password protected, as well as protected by other measures, including a firewall.

89. Upon information and belief, Defendant Brian Noe's accessed and copied Smart Mortgage's client database on December 20, 2019.

90. Defendant Brian Noe and Nexa Mortgage are currently using Smart Mortgage's client database to solicit clients while employed with Defendant Nexa Mortgage.

91. Smart Mortgage and Nexa Mortgage are competitors in the residential mortgage loan brokerage industry.

92. Upon information and belief, Defendant Brian Noe unlawfully disclosed Smart Mortgage's trade secrets, that he had wrongfully copied from his Smart Mortgage company issued work computer.

93. Defendant Brian Noe left Smart Mortgage Centers for employment in a similar position with Defendant Nexa Mortgage.

94. Under these circumstances, given Defendant Brian Noe's prior employment with Smart Mortgage and his wrongful copying of Smart Mortgage's trade secrets, Defendant Nexa Mortgage's use of the trade secrets is evident in Defendant Brian Noe's closed transactions with Defendant Nexa Mortgage and can also be inferred under the "inevitable disclosure doctrine".

95. The Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq., which was passed into law on May 11, 2016, specifically allows a private right of action for misappropriation of trade secrets.

96. Smart Mortgage is an owner of trade secrets, as defined by the Defend Trade Secrets Act which have been willfully misappropriated by Defendants Brian Noe and Nexa Mortgage. A person misappropriates a trade secret by, among other things, disclosing the trade secret despite knowing that it was acquired under circumstances giving rise to a duty to maintain its secrecy or limits its use or from a person who had a duty to maintain its secrecy or use.

97. Smart Mortgage took affirmative measures to keep its confidential and proprietary information secret.

98. Defendant Brian Noe received an offer of employment from Defendant Nexa Mortgage which he accepted.

99. Defendant Brian Noe signed an employment agreement with Smart Mortgage that included restrictive covenants concerning confidential information.

100. Defendant Brian Noe's computer at Smart Mortgage showed activity in which proprietary trade secret data and files were accessed and copied on December 20, 2019.

101. Smart Mortgage has no adequate remedy at law to protect against the illegal misappropriation and use of its trade secrets by Defendants Brian Noe and Nexa Mortgage. Injunctive relief is, therefore, necessary and appropriate to restrain the illegal misappropriation and use of such trade secrets and confidential information pursuant to the Defend Trade Secrets Act.

102. Unless Defendants Brian Noe and Nexa Mortgage are restrained and enjoined from using Smart Mortgage's trade secrets and confidential information, Smart Mortgage Centers will suffer immediate and irreparable injury in that Defendants Brian Noe and Nexa Mortgage will continue to have access and the ability to make use of the trade secrets and confidential information.

103. As a direct and proximate result of Defendants Brian Noe and Nexa Mortgage's actual and threatened misappropriation of Smart Mortgage's trade secrets and confidential information, Smart Mortgage has suffered damages in an amount yet to be determined. Defendant Nexa Mortgage has been unjustly enriched. Pursuant to the Defense of Trade Secrets Act, Smart Mortgage is entitled to recover damages. By reason of Defendants Brian Noe and Nexa Mortgage's willful and malicious acts, Smart Mortgage is entitled to an award of exemplary damages from Defendants Brian Noe and Nexa Mortgage in such amounts as is necessary to punish Nexa Mortgage and Brian Noe and deter them from commission of like acts and, in addition, reasonable attorneys' fees pursuant to the Defend Trade Secrets Act.

## PRAYER FOR RELIEF

Smart Mortgage respectfully requests that the Court find in its favor and against Defendants Brian Noe and Nexa Mortgage and that the Court grants Smart Mortgage the following relief:

A. Permanently enjoining Defendant Brian Noe and Defendant Nexa Mortgage and its officers, directors, agents, servants, employees, affiliates, divisions, branches, subsidiaries, parents and all others acting in concert or privity with any of them from using Smart Mortgage's trade secrets;

B. Awarding to Smart Mortgage the damages to which it is entitled for Defendant Brian Noe and Nexa Mortgage misappropriation of Smart Mortgage's trade secrets up until the Defendants are finally and permanently enjoined from further infringement, including compensatory damages, under the Defend Trade Secrets Act;

C. Awarding to Smart Mortgage the attorneys' fees to which it is entitled for Defendants Brian Noe and Nexa Mortgage's misappropriation of Smart Mortgage's trade secrets;

D. Awarding Smart Mortgage Centers costs and expenses in this action;

E. Awarding Smart Mortgage Centers pre-and post-judgment interest on its damages; and

F. Such other and further relief as the Court deems just and equitable.

Smart Mortgage hereby demands a trial by jury.

For the Plaintiff

Smart Mortgage Centers, Inc.

By its attorney,
s/Wilton A. Person

_____
Wilton A. Person

ARDC # 6290441
Wilton A. Person
Attorney for the Plaintiff Smart Mortgage Centers, Inc.
24330 Leski Lane
Plainfield, Illinois 60585
(815) 254-2467
wperson@personlaw.com