UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SMART MORTGAGE CENTERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 20 C 7248 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| BRIAN NOE, NEXA MORTGAGE, LLC, | ) | |
| SECURED MORTGAGE PROCESSING, LLC, and | ) | |
| EILEEN PRUITT, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Smart Mortgage Centers, Inc. brings this suit against two individuals (Brian Noe and Eileen Pruitt) and two companies (NEXA Mortgage, LLC and Secured Mortgage Processing, LLC) under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. §§ 1832-1833, 1835-1836, 1838-1839, and the Computer Fraud and Abuse Act of 1986 ("CFAA"), 18 U.S.C. § 1030, alleging that Defendants unlawfully obtained and used its proprietary trade information. Doc. 13. The court ordered Smart Mortgage to show cause why the suit should not be stayed under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), pending resolution of a state court suit involving the same facts and parties. Doc. 11. Having considered Smart Mortgage's response, Doc. 14, the court will stay the case.

**Background**

A.   **The State Court Suit**

In February 2020, Smart Mortgage filed suit against Defendants in the Circuit Court of Will County, Illinois. *Smart Mortg. Ctrs., Inc. v. Noe*, No. 20 CH 292 (Ill. Cir. Ct. Will Cnty., Ill.) (*Smart Mortg. I*); Doc. 24-4 (third amended complaint in *Smart Mortgage I*). The gravamen of the suit is that Noe and Pruitt misappropriated proprietary information at the end of their

1

employment with Smart Mortgage and used it to solicit customers in their subsequent employment with NEXA. Docs. 24-1, 24-4. Smart Mortgage asserts in that suit state law claims for contractual breach, tortious interference, and misappropriation of trade secrets. Doc. 24-1 at ¶¶ 29-86. Smart Mortgage moved for a temporary restraining order, *id*. at ¶¶ 24-28, and the state court granted the motion in part in March 2020, ordering Noe, Pruitt, and NEXA to return information taken from Smart Mortgage's database, Doc. 24-3. The suit remains pending in state court, where Smart Mortgage is up to its fifth amended complaint and significant discovery has taken place. Doc. 24 at 4, 12; *see Smart Mortg. I* (docket entries of May 11, 2021).

B.     **This Suit**

The parties held a settlement conference in the state court suit on December 9, 2020. Doc. 24 at 2. On December 8—the day before—Smart Mortgage filed this suit, alleging a single federal claim under the DTSA against Noe and NEXA. Doc. 1. In February 2021, this court ordered Smart Mortgage to "show cause in writing why this case should not be stayed pursuant to the *Colorado River* doctrine in light of the pending proceedings in" state court. Doc. 11. Ten days later, Smart Mortgage filed an amended complaint in this suit, adding a CFAA claim and adding Pruitt and Mortgage Processing as defendants. Doc. 13. The parties in this suit are thus the same as those in the state court suit, and the facts alleged in the amended complaint here are essentially identical to those alleged in state court. Doc. 24 at 5.

**Discussion**

The *Colorado River* doctrine provides that "a federal court may stay or dismiss a suit in federal court when a concurrent state court case is underway, but only under exceptional circumstances and if it would promote 'wise judicial administration.'" *Freed v. JPMorgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (quoting *Colo. River*, 424 U.S. at 818); *see also Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir.

2

1992).  The Supreme Court "has cautioned that abstention is appropriate only in 'exceptional circumstances,' and has also emphasized that federal courts have a 'virtually unflagging obligation … to exercise the jurisdiction given them.'"  *AXA Corp. Sols. v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) (alteration in original) (quoting *Colo. River*, 424 U.S. at 813, 817).  In deciding whether to abstain, the court's task is "not to find some substantial reason for the exercise of federal jurisdiction … ; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the surrender of that jurisdiction."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983) (emphasis and internal quotation marks omitted).

The *Colorado River* analysis has two steps.  First, the court asks "whether the state and federal court actions are parallel."  *Freed*, 756 F.3d at 1018.  If the proceedings are not parallel, *Colorado River* abstention must be denied.  *See ibid*.  If the proceedings are parallel, the court must weigh ten nonexclusive factors to determine whether abstention is proper.  *See ibid*.

**I.      This Suit and the State Court Suit Are Parallel**

"[F]or *Colorado River* purposes … [p]recisely formal symmetry" between the state and federal suits is "unnecessary" to find parallelism.  *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498-99 (7th Cir. 2011); *see also Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988) ("Interstate is correct in its assertion that differences [between the two suits] exist.  However, the requirement is of parallel suits, not identical suits.").  Rather, suits are parallel where "substantially the same parties are contemporaneously litigating substantially the same issues in another forum."  *Freed*, 756 F.3d at 1019 (internal quotation marks omitted).  Thus, "[t]he question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state] litigation will dispose of all claims presented in the federal

3

case." *AAR Int'l, Inc. v. Nimelias Enters.*, 250 F.3d 510, 518 (7th Cir. 2001) (internal quotation marks omitted); *see also Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011) (same). "Any doubt regarding the parallel nature of the [state] suit should be resolved in favor of exercising jurisdiction." *Adkins*, 644 F.3d at 499 (alteration in original) (internal quotation marks omitted).

The parallelism test is satisfied here. There is complete overlap between the two suits as to the parties and factual allegations. The only difference is that the claims in the state court suit arise under state law while the claims in this suit arise under federal law. But the gravamen of both suits is the same: Smart Mortgage alleges that Noe and Pruitt misappropriated its proprietary client information and are unlawfully using that information to compete against it while employed at NEXA, and it seeks damages (to account for past misuse) and an injunction (to prevent future misuse). In other words: "The factual allegations and legal analyses in the cases largely overlap, and the issues will be resolved largely by referencing the same facts and evidence. Therefore, the issues in the two cases, while not identical, are substantially the same." *Freed*, 756 F.3d at 1020.

Smart Mortgage's only argument against parallelism is that its CFAA claim here has no counterpart in the state court suit. Doc. 14 at 4-5. In particular, it points out that the CFAA claim focuses on Noe's and Pruitt's alleged "hacking of their computers, deletion of their hard drives, and … illegal transfer of [Smart Mortgage's] client data," while the state court claims are focus on the validity and breach of Noe's and Pruitt's retention agreements with Smart Mortgage. *Ibid*. Given this, Smart Mortgage argues, "it is not substantially likely that the state litigation will dispose of all claims presented in the federal case." *Id*. at 5.

Smart Mortgage's conclusion does not follow from its premises. Although the elements of its CFAA claim might differ from the elements of its other claims, Smart Mortgage points to no *relief* it seeks only under the CFAA or that would be available only under that statute. The CFAA claim here seeks compensatory damages and injunctive relief, Doc. 13 at pp. 19-20, the same relief sought in state court, and both suits rest on the same array of factual allegations. *See Oliver v. Fort Wayne Educ. Ass'n*, 820 F.2d 913, 916 (7th Cir. 1987) ("[T]he plaintiffs are seeking the same relief in both suits. To avoid such duplicative litigation, abstention is appropriate."). And given the close similarity between the two suits, if the state court reaches a final judgment on the merits, that judgment likely would have preclusive effect on the federal claims that Smart Mortgage brings here. *See Huon*, 657 F.3d at 647 ("Illinois imposes three requirements for *res judicata* to apply: '(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies.' *River Park* adopted a transactional approach to the second of these elements, under which 'the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief.'") (quoting *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889, 891 (Ill. 1998)). The two suits are thus parallel under *Colorado River*. *See AAR Int'l*, 250 F.3d at 518 ("Suits need not be identical to be parallel, and the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel.") (citation omitted).

## II. The *Colorado River* Factors Support Abstention

The second step in the *Colorado River* analysis requires examining and balancing these ten nonexclusive factors:

    (1) whether the state has assumed jurisdiction over property;

    (2) the inconvenience of the federal forum;

5

>   (3) the desirability of avoiding piecemeal litigation;
>
>   (4) the order in which jurisdiction was obtained by the concurrent forums;
>
>   (5) the source of governing law, state or federal;
>
>   (6) the adequacy of state-court action to protect the federal plaintiff's rights;
>
>   (7) the relative progress of state and federal proceedings;
>
>   (8) the presence or absence of concurrent jurisdiction;
>
>   (9) the availability of removal; and
>
>   (10) the vexatious or contrived nature of the federal claim.

*Freed*, 756 F.3d at 1018. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colo. River*, 424 U.S. at 818-19. The court addresses each factor in turn. *See Freed*, 756 F.3d at 1022 (noting that *Colorado River* abstention requires adherence to "rigorous standards," which the district court met by "carefully address[ing] each of the ten factors and provid[ing] sufficient explanations for its findings").

>   1. *Whether the state court has assumed jurisdiction over property*. Defendants argue that this factor favors abstention, suggesting that the state court, when it issued a temporary restraining order requiring them to return customer lists and database materials to Smart Mortgage, assumed jurisdiction over those materials. Doc. 24 at 9. Not so. The state court suit is *in personam*, not *in rem*. *See Penn Gen. Cas. Co. v. Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195 (1935) (recognizing that, if "the judgment sought is … for the recovery of money or for an injunction compelling or restraining action by the defendant," then it is "strictly in personam"). And the first *Colorado River* factor applies only in *in rem* suits. *See Crawley v. Hamilton Cnty. Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984) ("[T]he state court … never assumed jurisdiction over any *res* or property. … This was strictly an *in personam* action. Moreover, the

6

cases relied upon by the Court in *Colorado River* for the *res* exception all dealt with the disposition of property, such as a trust."); *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 180 F. Supp. 2d 1235, 1241 (D. Kan. 2001) ("[T]he [state court] actions are based on *in personam* jurisdiction, not *in rem* jurisdiction, and thus neither court has assumed jurisdiction within the meaning of the *Colorado River* doctrine."). This factor therefore has no bearing here. *See DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 478 (7th Cir. 2020) ("This case is not about property, and so Factor 1 can be ignored.").

2. *The inconvenience of the federal forum*. This factor concerns the "relative inconvenience of the competing fora to the parties." *AAR Int'l*, 250 F.3d at 522-23 (emphasis omitted). The margins are slight here, as Smart Mortgage, Noe, and Pruitt are all based in the Northern District of Illinois. Doc. 13 at ¶¶ 1-3. (NEXA and Secured Mortgage are alleged to be Arizona LLCs, *id*. at ¶¶ 4-5, but the complaint does not identify the location of their principal places of business.) Smart Mortgage's principal place of business is in Naperville, Doc. 13 at ¶ 1, about 16 miles from the Will County Courthouse in Joliet and about 39 miles from the Dirksen Federal Building in downtown Chicago (all estimates per Google Maps). Noe lives in Plainfield, Doc. 24 at 10, which puts him roughly 12 miles from the Joliet courthouse and 38 miles from downtown Chicago. Pruitt lives in North Aurora, *ibid*., which is roughly equidistant from both courthouses. All told, this factor tips slightly in favor of abstention.

3. *The desirability of avoiding piecemeal litigation*. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Day v. Union Mines, Inc.*, 862 F.2d 652, 659 (7th Cir. 1988) (internal quotation marks omitted). "Dual proceedings could involve … a grand waste of efforts by both the court and parties in litigating the same issues … in two forums at once." *Ibid*. (internal

7

quotation marks omitted). It may be true that the discovery necessary for the CFAA claim here will differ slightly from the discovery necessary for the other claims. But the CFAA claim still involves the same parties and similar facts as the other claims, so litigating the CFAA claim in federal court would be far less efficient. And the other claim in the federal suit, a DTSA trade secret claim, closely parallels the claim in the state court suit under the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.* Doc. 24-4 at ¶¶ 150-171. Proceeding simultaneously in both state and federal court thus would ensure "duplicative and wasteful litigation with the potential of inconsistent resolutions of" the question whether Noe and Pruitt acted wrongfully toward Smart Mortgage. *Caminiti & Iatarola*, 962 F.2d at 701; *see also DePuy Synthes Sales*, 953 F.3d at 478 ("[F]unctionally identical suits in two places creates a high risk of inconsistent results and wasteful duplication."). This factor strongly favors abstention.

4. *The order in which jurisdiction was obtained by the concurrent forums*. Smart Mortgage filed its state court suit in February 2020, almost a year before it filed this suit. This factor favors abstention. *See Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 697 (7th Cir. 1985) (holding that this factor favored abstention where the state case was filed five months before the federal case).

5. *The source of governing law, state or federal*. Both counts asserted in this suit arise under federal law, which is a "major consideration weighing against" abstention. *Cone Mem'l Hosp.*, 460 U.S. at 26. But the DTSA claim depends in large part on whether Noe's and Pruitt's postemployment restrictive covenants can be enforced, which poses a question of state law—and one at the heart of the state court suit. Doc. 14 at 6; Doc. 24 at 3, 11-12; Doc. 24-4 at ¶¶ 61, 69-93. The presence of the DTSA claim is therefore neutral. *See DePuy Synthes Sales*, 953 F.3d at 478 (holding that this factor "is at best a neutral factor" where the plaintiff's federal claim

required resolution of a logically anterior question of state contract law). The presence of the CFAA claim would tilt this factor slightly against abstention but for the fact (discussed below) that the claim was belatedly inserted by Smart Mortgage into the federal suit, likely for the sole purpose of staving off abstention. With that point in mind, this factor is neutral.

6. *The adequacy of state court action to protect the federal plaintiff's rights*. There is no reason to think that the state court is an inadequate forum for the vindication of Smart Mortgage's rights. *See DePuy Synthes Sales*, 953 F.3d at 479 ("The state courts are co-equal partners with the federal courts when it comes to protecting federal rights."). Smart Mortgage's actions as a litigant confirm as much, as it chose to assert the bulk of its claims in state court. Moreover, Smart Mortgage does not point to any relief it seeks in federal court that would not be available in state court under its state law claims. In any event, by abstaining under *Colorado River*, this court is "not *dismiss[ing]* [Smart Mortgage's] federal claims, but rather *stay[ing]* them pending the resolution of the state court proceeding." *Freed*, 756 F.3d at 1023. If at the conclusion of the state court proceedings Smart Mortgage believes that the state courts "inadequate[ly]" protected its rights, it will have a chance, when the stay is lifted, to argue here that the state court judgment should not be accorded preclusive effect. *Ibid*. This factor favors abstention.

7. *The relative progress of state and federal proceedings*. This factor requires consideration of which case "appear[s] to be closer to a resolution." *Caminiti & Iatarola*, 962 F.2d at 702. Significant progress has been made in state court—several dispositive motions, several amendments to the complaint, a temporary restraining order, subpoenas, a settlement conference, and a motion for an entry of default against Secured Mortgage. Doc. 24 at 7. Here in federal court, little has happened beyond the briefing on the *Colorado River* issue and an

amended complaint which, as discussed below, seems to have been filed by Smart Mortgage as a tactic to avoid a stay. This factor favors abstention.

8. *The presence or absence of concurrent jurisdiction*. Smart Mortgage concedes that "[t]he Will County Circuit Court would most likely have concurrent jurisdiction over [its] federal claims." Doc. 14 at 8. This factor favors abstention. *See DePuy Synthes Sales*, 953 F.3d at 479 (holding that the state court's concurrent jurisdiction over the plaintiff's federal claims weighs in favor of abstention).

9. *The availability of removal*. This factor "intends to prevent a federal court from hearing claims that are closely related to state proceedings that cannot be removed." *Freed*, 756 F.3d at 1023. The state court case cannot be removed to federal court because it involves only state law claims among nondiverse parties. Doc. 13 at ¶¶ 1-3. This factor therefore favors abstention.

10. *The vexatious or contrived nature of the federal claims*. This factor strongly favors abstention. Smart Mortgage's conduct as relates to this suit has been suspicious, to put it mildly. First, Smart Mortgage filed this suit the day before a settlement conference in the state court suit, which strongly suggests that its primary motivation was to gain leverage in the state court negotiations. *See DePuy Synthes Sales*, 953 F.3d at 479 (in affirming the district court's decision to abstain, observing that the plaintiff's "decision to open a second front" in federal court "was at best opportunistic and at worst manipulative"). That is an improper use of the federal judicial system.

Next, there is no reason why Smart Mortgage could not have asserted its federal claims in the state court suit. When pressed on this point at argument, counsel could say only that Smart Mortgage lacked confidence in the state court's ability to properly interpret and apply the DTSA,

a statute of relatively recent vintage. Doc. 25. That unpersuasive excuse offends both the capable Illinois state courts and longstanding principles of judicial federalism. *See Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) ("Under th[e] system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States."); *DePuy Synthes Sales*, 953 F.3d at 479 ("The state courts are co-equal partners with the federal courts when it comes to protecting federal rights.").

Finally, the CFAA claim in this suit—which has no analog in the state court suit and upon which Smart Mortgage bases its argument that a stay would be improper, Doc. 14 at 4-5—was asserted only *after* the court raised the suggestion of *Colorado River* abstention, Docs. 11, 13. Again, Smart Mortgage's timing strongly suggests that injecting the CFAA claim into this case was just another tactic—this one to forestall abstention and a stay—rather than a good-faith assertion of a federal right.

* * *

In sum, each *Colorado River* factor either favors abstention or is neutral, providing the "exceptional circumstances" necessary to abstain. *Tyrer v. City of South Beloit*, 456 F.3d 744, 757 (7th Cir. 2006). This is reassuring, as this suit is the quintessential paradigm for abstention: Smart Mortgage filed a totally unnecessary suit in federal court despite an ongoing state court case involving the same parties and the same facts, in which it could have asserted exactly the same claims and in which it was already seeking the same relief. What is more, Smart Mortgage's patently transparent timing—both the filing of this suit on the eve of the settlement conference in the state court suit, and the addition of the CFAA claim after this court raised the *Colorado River* issue—shows that it is using this suit to gain leverage in the state court suit. If

*Colorado River* abstention were not appropriate here, it is hard to imagine where it would be. Smart Mortgage would be well advised to dismiss this suit in short order, lest it exacerbate its existing exposure to possible sanctions.

The only remaining question is whether this suit should be dismissed or stayed. The Seventh Circuit routinely holds that *Colorado River* should be implemented through a stay, not dismissal. *See Montaño v. City of Chicago*, 375 F.3d 593, 602 (7th Cir. 2004); *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 851-52 (7th Cir. 2002). Accordingly, this suit is stayed pending further proceedings in the state court suit.

**Conclusion**

The case is stayed under the *Colorado River* doctrine pending resolution of the state court suit, *Smart Mortgage Centers, Inc. v. Noe*, No. 20 CH 292 (Ill. Cir. Ct. Will Cnty., Ill.). When the state court litigation (including any appeals) concludes, or at any appropriate juncture before then, any party may move to lift the stay and proceed in a manner consistent with the state court's rulings and applicable preclusion principles. *See Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995) ("It is sensible to stay proceedings until an earlier-filed state case has reached a conclusion, and then (but only then) to dismiss the suit outright on grounds of … preclusion.").

June 4, 2021

_____
United States District Judge